**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EDDIE MENDIOLA,

        Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

No. 12-9570

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **EBEL**, and **HOLMES**, Circuit Judges.

Petitioner-Appellant Eddie Mendiola petitions this court for review of a

final order issued by the Board of Immigration Appeals (the "Board" or "BIA")

on July 11, 2012, denying his third, untimely motion to reopen his removal

proceedings. Mr. Mendiola argued that although the motion to reopen was

untimely and numerically barred, his case nonetheless merited sua sponte

reopening based on intervening fundamental changes in the law. Mr. Mendiola

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

argued that sua sponte reopening was warranted because, due to new Supreme Court precedent relating to the basis for his removal and to alleged ineffective assistance of counsel, his initial removal was legally invalid. The Board denied Mr. Mendiola's motion, concluding that the ineffective-assistance claim failed on its merits because Mr. Mendiola had not demonstrated that he was prejudiced by his attorney's alleged failings, and finding that Mr. Mendiola had failed to show that the purported fundamental changes in the law entitled him to relief.

To the extent that Mr. Mendiola challenges the Board's exercise of discretion in declining to sua sponte reopen removal proceedings, we **dismiss** for lack of jurisdiction. With respect to Mr. Mendiola's ineffective-assistance argument and his change-of-law argument based on the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010)—to the extent that he argues that the case affects the fact of his removability—we find that these arguments fail on their merits; accordingly, we **deny** Mr. Mendiola's petition and **affirm** the decision of the Board on these points. Finally, with respect to Mr. Mendiola's argument that, under *Carachuri-Rosendo* he is entitled to seek cancellation of removal, for the reasons set forth below we **grant** the petition and **remand** this claim to the Board to clarify the basis of its decision.

# I

Mr. Mendiola is a native citizen of Peru who became a lawful permanent resident of the United States on April 28, 1989. Mr. Mendiola has a lengthy criminal history. On July 29, 1996, he was convicted in the Superior Court of Orange County, California, for assault with a deadly weapon, a felony, in violation of section 245(a)(1) of the California Penal Code; and of possession of a controlled substance (steroids), a misdemeanor, in violation of section 11377(a) of the California Health and Safety Code. On April 7, 2000, Mr. Mendiola was convicted once again for possession of a controlled substance (steroids) in violation of section 11377(a), this time as a felony.[1] On September 25, 2003, Mr. Mendiola was convicted in the First Judicial District of Kootenai County, Idaho, of accessory to a felony, in violation of Sections 18–205 and 18–206 of the Idaho Code.

The Department of Homeland Security ("DHS") commenced removal proceedings against Mr. Mendiola on April 16, 2004, in Aurora, Colorado, under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), based on Mr. Mendiola's conviction of an aggravated felony as defined in section 101(a)(43)(B) of the INA, 8 U.S.C. § 1101(a)(43)(B).

---

[1] Under California law, section 11377(a) is a "wobbler," meaning "the Legislature has determined that either a misdemeanor or a felony punishment may be appropriate in the discretion of the sentencing court." *People v. Superior Ct. (Alvarez)*, 928 P.2d 1171, 1178 (Cal. 1997).

On July 14, 2004, the immigration judge entered an oral decision, concluding that Mr. Mendiola's conviction for possession of steroids was a "drug offense [a]s defined in the federal statutes." R. at 780 (Oral Decision of Immigration Judge, dated July 14, 2004). The immigration judge further concluded that Mr. Mendiola was removable as an aggravated felon based on his second conviction, explaining that "[i]f an individual is convicted of a second drug offense under the federal code, it is regarded as a felony."[2] *Id.* Based on these findings, the immigration judge ordered Mr. Mendiola removed to Peru.

Mr. Mendiola appealed the decision of the immigration judge to the Board, which affirmed the decision on November 9, 2004. The Board explained:

> [Mr. Mendiola's] California convictions for possession of a controlled substance was [sic] a "drug trafficking crime" under 18 U.S.C. § 924(c)(2) and therefore an aggravated felony under . . . 8 U.S.C. § 1101(a)(43)(B). In removal proceedings, the determination [of] whether a state drug offense constitutes a "drug trafficking crime" is made by reference to decisional

---

[2]     The definition of an "aggravated felony" in 8 U.S.C. § 1101(a)(43)(B) includes, *inter alia*, any "drug trafficking crime" as defined in 18 U.S.C. § 924(c)(2)—i.e., any "felony punishable under the Controlled Substances Act." Under federal law, a felony is a crime for which the "maximum term of imprisonment authorized" is "more than one year." 18 U.S.C. § 3559(a). Although simple possession offenses (like Mr. Mendiola's) are ordinarily misdemeanors punishable with shorter sentences, 21 U.S.C. § 844(a) makes recidivist simple-possession offenses punishable as felonies. Thus, for a simple-possession conviction to be an aggravated felony under federal law, it must be a recidivist simple-possession conviction. That is, the defendant must have knowingly or intentionally possessed a controlled substance "after a prior conviction under [federal drug law] or . . . for any drug, narcotic, or chemical offense chargeable under the law of any State." 21 U.S.C. § 844(a).

-4-

authority from the pertinent [jurisdiction]. The Tenth Circuit has consistently held that a state drug offense qualifies as a drug trafficking aggravated felony if it is punishable under federal narcotics law and classified as a felony in the convicting jurisdiction. The Immigration Judge found that steroids are controlled substances under federal law, the possession of which violates 21 U.S.C. § 844(a), and the respondent has not contested that finding on appeal. Moreover, California classifies the respondent's 2000 offense as a felony. It follows that the Immigration Judge correctly concluded that the respondent was an aggravated felon, and ineligible for any form of relief from removal.

*Id.* at 726 (Board Order, dated Nov. 9, 2004) (citations omitted).

Mr. Mendiola was removed from the United States on March 2, 2005. He re-entered the country illegally on or about July 15, 2005. Following re-entry, Mr. Mendiola petitioned this court for judicial review of the Board's 2004 order. On July 27, 2006, we dismissed that petition in part and denied it in part. *See Mendiola v. Gonzales*, 189 F. App'x 810 (10th Cir. 2006). On November 14, 2006, DHS issued an order reinstating Mr. Mendiola's prior removal order.

On May 14, 2007, Mr. Mendiola, through his attorney, filed his first motion to reopen his removal proceedings with the Board. In this motion, Mr. Mendiola made several arguments, including: (1) that the initial removal order "ha[d] been collaterally overturned by the Supreme Court" in *Lopez v. Gonzales*, 549 U.S. 47 (2006), which he cited for the proposition that "a possessory offense of a controlled substance is a misdemeanor under federal law," R. at 712, 715 (Mot. to Reopen Removal Proceedings, filed May 14, 2007); (2) that the Board could

reopen his proceedings sua sponte; and (3) that his motion was not number-barred

or barred on any other procedural grounds. The Board denied this motion for lack

of jurisdiction on June 11, 2007. It explained that under 8 C.F.R.

§ 1003.2(d)—the so-called "post-departure bar"—"[a] motion to reopen may not

be made by an alien in removal proceedings subsequent to his departure from the

United States."[3] *Id.* at 701 (Board Order, dated June 11, 2007).

Mr. Mendiola again petitioned this court for judicial review of the Board's

decision. On May 30, 2008, we affirmed the Board's jurisdictional ruling. We

rejected Mr. Mendiola's belated appellate argument challenging the application of

the post-departure bar, explaining that Mr. Mendiola had failed to challenge the

Board's application of the doctrine in his opening brief and thus had "waived this

argument." *Mendiola v. Mukasey*, 280 F. App'x 719, 722 (10th Cir. 2008). We

also noted, however, that even if the post-departure bar did not apply to Mr.

Mendiola, his invocation of the Supreme Court's decision in *Lopez* "[would] not

assist him," because "[u]nder the Controlled Substances Act, a conviction for

possession of a controlled substance committed after a prior possession

---

[3] In a footnote, the Board also observed that the Supreme Court's decision in *Lopez* "[did] not assist [Mr. Mendiola] in any event" because his "second possession conviction [was] an aggravated felony under federal law." R. at 702 n.1. That is, while *Lopez* clarified that only offenses that would be felonies under *federal* law qualify as "aggravated felonies" under the INA, and that simple possession thus ordinarily does not qualify, it also expressly acknowledged that "recidivist possession" as defined in 21 U.S.C. § 844(a) *is* a felony under federal law. *See Lopez*, 549 U.S. at 54–55 & n.6.

conviction" is a felony.  *Id.*

On September 11, 2008, Mr. Mendiola, through new counsel, filed with the Board a second motion to reopen, styled a "motion to reopen and motion to reconsider to vacate invalid removal order pursuant to 8 C.F.R. § 1003.2(a) and 8 C.F.R. § 1003.2(c)(1)."  R. at 478 (Mot. to Reopen & Reconsider, filed Sept. 11, 2008) (capitalization altered).  In this motion, Mr. Mendiola asked the Board to exercise its sua sponte authority to reopen his proceedings and vacate his removal on the basis that his 2005 removal had been unlawful because it was predicated on the finding that his conviction in 2000 (his second conviction for possession of steroids) was a felony conviction, whereas "[o]n August 28, 2007, the Superior Court of the State of California entered an order clarifying that [the conviction] was and will always be a misdemeanor" under state law.  *Id.* at 486–87.  Alternatively, Mr. Mendiola argued that his removal proceeding should be reopened "pursuant to 8 C.F.R. § 1003.2(c)(1) based on ineffective assistance of counsel," principally because his former attorney "failed to raise available defenses and remedies establishing that Mr. Mendiola had not been convicted of any offense that has adverse immigration consequences."  *Id.* at 498.  Although the motion was filed well after the ninety-day deadline for motions to reopen, *see* 8 C.F.R. § 1003.2(c)(2), Mr. Mendiola argued that the motion to reopen was not time-barred for two reasons: first, because "numerical and time limitations for filing a motion to reopen do not confine [the Board's] *sua sponte* authority to

-7-

reopen proceedings," R. at 496, and second, because his delay in filing was a consequence of his "former attorney's actions and omissions" and thus any applicable time and number limits should be equitably tolled, *see id.* at 496–98.

The Board denied Mr. Mendiola's second motion to reopen on October 7, 2008, once again relying on the jurisdiction-stripping effect of the post-departure bar. Observing first that the motion to reopen was both untimely and number-barred, the Board then proceeded to explain that because Mr. Mendiola had previously been removed from the United States on March 2, 2005, he was "precluded by [the post-departure bar in] 8 C.F.R. § 1003.2(d) from reopening proceedings and [the Board thus lacked] authority to reopen or reconsider *sua sponte* pursuant to 8 C.F.R. § 1003.2(a)." R. at 265 (Board Order, dated Oct. 7, 2008).

Mr. Mendiola again sought judicial review of the Board's decision, and on October 28, 2009, we again denied Mr. Mendiola's petition. *See Mendiola v. Holder*, 585 F.3d 1303 (10th Cir. 2009), *overruled by Contreras-Bocanegra v. Holder*, 678 F.3d 811 (10th Cir. 2012) (en banc). In denying review, we held that the Board had "correctly determined 8 C.F.R. § 1003.2(d)'s post-departure bar divest[ed] it of jurisdiction to review a motion to reopen filed by a removed alien, like [Mr. Mendiola]." *Id.* at 1310. In light of this holding, we declined to consider whether the Board should have equitably tolled the time and numerical limits on filing motions to reopen found in 8 C.F.R. § 1003.2(c) based on the

alleged ineffective assistance of Mr. Mendiola's prior counsel. *See id.* at 1310–11. Mr. Mendiola was once again removed to Peru in approximately July 2010.

On March 28, 2012, through his current counsel, Mr. Mendiola filed a third motion to reopen with the Board, a "motion for *sua sponte* reopening based on change in law." R. at 48–71 (Mot. for Sua Sponte Reopening, filed Mar. 28, 2012) (capitalization altered). In this motion, Mr. Mendiola argued that the Board should exercise its sua sponte authority to reopen his case based on changes in the law brought about by our en banc decision in *Contreras-Bocanegra* and by the Supreme Court's decision in *Carachuri-Rosendo*. Mr. Mendiola also argued once again that his removal proceedings should be reopened based on his having received ineffective assistance of counsel due to his prior counsel's failure to argue that the substances at issue in his 1996 and 2000 state convictions were not "controlled substances" under federal law as required by *Matter of Paulus*, 11 I. & N. Dec. 274 (BIA 1965). The ultimate relief that Mr. Mendiola hoped to obtain through reopening was termination of his removal proceedings or, alternatively, cancellation of removal under 8 U.S.C. § 1229b(a).

On July 11, 2012, the Board issued a written decision denying Mr. Mendiola's motion to reopen. Noting that the motion was both untimely and numerically barred, the Board rejected each of Mr. Mendiola's attempts to avoid these procedural hurdles. First, the Board found that, "[t]o the extent that [Mr.

Mendiola was] raising a claim of ineffective assistance of counsel against his former attorney, he [did] not establish[] prejudice such that equitable tolling of the time and number limits [was] warranted." R. at 3 (Board Order, dated July 11, 2012). Second, the Board rejected Mr. Mendiola's request for sua sponte reopening based on the changes in the law (which would not be subject to time and numbers bars) because he had "not demonstrated prima facie eligibility for any immediately available forms of relief" arising out of those changes. *Id.* at 4.

In that regard, the Board noted that Mr Mendiola had not "contest[ed] that he was [lawfully] removable as an aggravated felon at the time of his removal from the United States in 2005," and it explained that because "[Mr. Mendiola's] removal from the United States in March 2005 was lawful[,] . . . this removal served to terminate [Mr. Mendiola's] lawful permanent residence status." *Id.* "Consequently," Mr. Mendiola was "statutorily ineligible for cancellation of removal under section 240A(a) of the Act[, 8 U.S.C. § 1229b(a),] because he [wa]s no longer lawfully admitted for permanent residence." *Id.* Similarly, the Board found that "termination of [Mr. Mendiola's] removal proceedings [was] not appropriate" because "[a] decision of [the] Board granting [Mr. Mendiola's] motion would not restore him to his prior lawful permanent resident status . . . because such an order is merely an interlocutory measure authorizing the submission of new evidence; it does not abrogate the existing removal order or confer lawful immigration status on the movant." *Id.* Accordingly, the Board

-10-

denied Mr. Mendiola's motion, and the instant petition for judicial review timely followed.

## II

We first address our jurisdiction. The government argues that we lack jurisdiction for two reasons. First, the government contends that we lack jurisdiction "to review the Board's decision not to reopen Mr. Mendiola's order of removal pursuant to [section 241(a)(5) of the INA], 8 U.S.C. § 1231(a)(5), which provides that a reinstated order of removal 'is not subject to being reopened or reviewed . . . .'" Aplee. Br. at 18. Second, the government argues that we lack jurisdiction "to review Mr. Mendiola's petition for review to the extent that it challenges the Board's decision not to invoke its *sua sponte* authority to reopen his removal proceedings." *Id.* We address each of these jurisdictional arguments in turn.

## A

The government first argues that 8 U.S.C. § 1231(a)(5) precludes our review of Mr. Mendiola's motion to reopen. Under § 1231(a)(5):

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and *is not subject to being reopened or reviewed*, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (emphasis added).

-11-

It is undisputed that Mr. Mendiola was removed from the United States on March 2, 2005, and then reentered the United States illegally on or about July 15, 2005. DHS reinstated the prior order of removal on November 14, 2006, and Mr. Mendiola was removed again. Mr. Mendiola argues that it is unclear whether § 1231(a)(5) applies because "it is not clear from the record that [Mr. Mendiola] was removed pursuant to an order of reinstatement of removal." Aplt. Reply Br. at 3. He bases this argument on the fact that in August 2006, it appears as though DHS counsel considered not executing the November 2006 reinstatement order and instead placing Mr. Mendiola in new proceedings.[4] However, there is nothing in the record to indicate that DHS ever followed through with this course of action, and Mr. Mendiola was never placed into new proceedings. As such, for purposes of analyzing our jurisdiction—and because we ultimately conclude that we have jurisdiction regardless of whether Mr. Mendiola's reinstatement order was executed—we accept the government's assertion that the signed reinstatement order was executed. *See* Aplee. Br. at 22 n.3.

In *Lorenzo v. Mukasey*, 508 F.3d 1278 (10th Cir. 2007), we considered whether 8 U.S.C. § 1231(a)(5) deprived us of jurisdiction to consider a petitioner's claim where the petitioner had been subject to a reinstatement of

---

[4] The DHS record states: "AUSA Aitken had been in [contact] with ICE District Counsel Kevin Riley. Information from his [sic] was not to reinstate MENDIOLA but to once again have him go through formal deportation proceedings." R. at 32 (Form I-213, dated Aug. 7, 2008).

removal order. 508 F.3d at 1281. We concluded that we did in fact have jurisdiction. Specifically, we noted that the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), added 8 U.S.C. § 1252(a)(2)(D) to the INA, which authorizes us to review constitutional claims or questions of law despite the language in § 1231(a)(5).[5] *See Lorenzo*, 508 F.3d at 1281 & n.4; *see also Cordova-Soto v. Holder*, 659 F.3d 1029, 1031 (10th Cir. 2011) ("Section 1252(a)(2)(d) . . . preserve[s] our ability to review 'constitutional claims or questions of law,' notwithstanding other provisions in the [INA] that limit or eliminate judicial review."); *Debeato v. Att'y Gen. of U.S.*, 505 F.3d 231, 235 (3d Cir. 2007) ("Accordingly, we conclude that . . . § 1252(a)(2)(D)[] permits us to exercise jurisdiction over legal and constitutional challenges to final orders of removal, including those final orders that the Attorney General has reinstated pursuant to § 1231(a)(5)."); *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513–14 (5th Cir. 2006) ("Because § 1231(a)(5) limits judicial review, § 1252(a)(2)(D) prevents its operation in cases, such as this one, in which the validity of an underlying order is questioned on constitutional or legal grounds.").

---

[5] Section 1252(a)(2)(D) provides that "[n]othing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review [i.e., 8 U.S.C. § 1231(a)(5)], shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D); *see also Lorenzo*, 508 F.3d at 1281 n.3.

In assessing our jurisdiction, the relevant question is thus whether Mr. Mendiola's petition raises "constitutional claims or questions of law." We have previously construed § 1252(a)(2)(D)'s "constitutional claims or questions of law" language to reach "constitutional and statutory-construction questions," but "not discretionary or factual questions." *Lorenzo*, 508 F.3d at 1282 (quoting *Diallo v. Gonzales*, 447 F.3d 1274, 1281–82 (10th Cir. 2006)) (internal quotation marks omitted). Here, Mr. Mendiola argues that he was prejudiced as a result of ineffective assistance of counsel and that changes in the law require the Board to reopen his removal order. *See* Aplt. Opening Br. at 4. Because claims of ineffective assistance of counsel in immigration proceedings are grounded in the Due Process Clause of the Fifth Amendment, we conclude that Mr. Mendiola's ineffective-assistance claim sufficiently raises a constitutional issue and that we have jurisdiction to review it under § 1252(a)(2)(D).[6] We also conclude that

---

[6] Although the Attorney General's opinion in *In re Compean*, 24 I. & N. Dec. 710 (Att'y Gen. 2009) ("*Compean I*"), found—in a departure from prior cases—that the Constitution categorically did "not confer a constitutional right to effective assistance of counsel in removal proceedings" under either the Fifth or Sixth Amendments, *see id.* at 714, that opinion was subsequently vacated by *In re Compean*, 25 I. & N. Dec. 1 (Att'y Gen. 2009) ("*Compean II*"). *Compean II* directed the Board to apply pre-*Compean I* standards pending issuance of a new final rule addressing the appropriate treatment of ineffective assistance claims in removal proceedings.

The Department of Justice has yet to propose such a rule; in the interim, panels of this court have repeatedly made clear that aliens claiming ineffective assistance of counsel in removal proceedings do so under the Due Process Clause

(continued...)

-14-

whether changes in the law require the Board to sua sponte reopen is a question of

law over which we likewise have jurisdiction pursuant to § 1252(a)(2)(D).

**B**

Satisfied that we are not deprived of jurisdiction over these issues by

---

[6](...continued)
of the Fifth Amendment, and thus—we may infer—raise a constitutional issue.
*See, e.g.*, *Morales v. Holder*, 546 F. App'x 762, 768–69 (10th Cir. 2013) (relying
on pre-*Compean I* circuit precedent assessing ineffective-assistance claims under
the Fifth Amendment); *Mukhia v. Holder*, 507 F. App'x 824, 828 (10th Cir. 2013)
("The Fifth Amendment guarantees aliens subject to deportation the right to a
fundamentally fair deportation proceeding. And although there is no right to
appointed counsel in deportation proceedings, an alien can state a Fifth
Amendment violation if he proves that retained counsel was ineffective and, as a
result, the petitioner was denied a fundamentally fair proceeding." (brackets
omitted) (internal quotation marks omitted)); *Hernandez v. Holder*, 412 F. App'x
155, 158 (10th Cir. 2011) (stating that "[a]liens in removal proceedings . . . have
a right to effective representation grounded in the Fifth Amendment's guarantee
of due process"); *Raju v. Holder*, 421 F. App'x 795, 797 (10th Cir. 2010)
("Removal proceedings are civil in nature and therefore a claim for ineffective
assistance of counsel arises only from the due process guarantees of the Fifth
Amendment."); *Santos v. Holder*, 369 F. App'x 922, 925 n.4 (10th Cir. 2010)
("[B]ecause the question of ineffective assistance of counsel in immigration
proceedings is grounded in the constitutional claim of a due-process violation, we
have jurisdiction to consider [the petitioner's] claim under 8 U.S.C.
§ 1252(a)(2)(D)." (second alteration in original)).

Many of our sister circuits have reached the same conclusion in published
cases post-*Compean II*. *See, e.g.*, *United States v. Lopez-Chavez*, --- F.3d ----,
2014 WL 2978488, at *5 (9th Cir. 2014) (assessing ineffective assistance claim in
immigration proceedings under Fifth Amendment due process framework);
*Muyubisnay-Cungachi v. Holder*, 734 F.3d 66, 72 (1st Cir. 2013) (same);
*Zambrano-Reyes v. Holder*, 725 F.3d 744, 749–50 (7th Cir. 2013) (premising
jurisdiction under 8 U.S.C. § 1252(a)(2)(D) on ineffective assistance of counsel
claim under the Fifth Amendment); *Singh v. Holder*, 658 F.3d 879, 885 (9th Cir.
2011) (same); *Denis v. Att'y Gen. of U.S.*, 633 F.3d 201, 205–06 (3d Cir. 2011)
(same).

§ 1231(a)(5), we next turn to the government's second jurisdictional argument—that we lack jurisdiction to review the Board's decision not to invoke its sua sponte authority to grant Mr. Mendiola's motion to reopen because such decisions are by definition discretionary and non-reviewable. It is true, as the government contends, that we have consistently held that we lack jurisdiction to review the Board's actual exercise of discretion in deciding whether or not to sua sponte reopen removal proceedings. *See, e.g.*, *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004) ("[W]e do not have jurisdiction to consider [a] petitioner's claim that the [Board] should have sua sponte reopened . . . proceedings under 8 C.F.R. § 1003.2(a) because there are no standards by which to judge the agency's exercise of discretion."); *Belay-Gebru v. INS*, 327 F.3d 998, 1001 (10th Cir. 2003) ("Because we have no meaningful standard against which to judge the BIA's exercise of its discretion, we hold that we do not have jurisdiction to review [petitioner's] claim that the BIA should have *sua sponte* reconsidered the immigration judge's order denying asylum and withholding of deportation.").

Furthermore, though the Supreme Court's decision in *Kucana v. Holder*, 558 U.S. 233 (2010), found that federal courts have jurisdiction to review motions to reopen *generally*, the Court specifically reserved the question of whether sua sponte motions to reopen are subject to judicial review, and expressly acknowledged that pre-*Kucana* circuit authority weighed against allowing judicial

-16-

review of sua sponte motions to reopen because the decision not to reopen "[was] committed to agency discretion by law," *id.* at 251 n.18. That *Kucana* did not upend the earlier cases rejecting jurisdiction has been confirmed in the intervening years by a panel of this court, *see Bakanovas v. Holder*, 438 F. App'x 717, 722 (10th Cir. 2011) ("*Kucana* provides no ground for us to depart from circuit precedent. . . . [W]e lack jurisdiction to review the BIA's refusal to reopen sua sponte . . . ."), and, in published and unpublished decisions, by panels of many of our sister circuits, *see, e.g.*, *Bi Ying Lian v. U.S. Att'y Gen.*, 546 F. App'x 917, 919 (11th Cir. 2013) (per curiam); *Neves v. Holder*, 613 F.3d 30, 34–35 (1st Cir. 2010) (per curiam); *Gashi v. Holder*, 382 F. App'x 21, 22–23 (2d Cir. 2010) (per curiam); *Ozeiry v. Att'y Gen. of U.S.*, 400 F. App'x 647, 649–50 (3d Cir. 2010) (per curiam); *Ochoa v. Holder*, 604 F.3d 546, 549–50 & n.3 (8th Cir. 2010).

While it is thus clear that we *generally* lack jurisdiction to review the BIA's discretionary decision to grant or deny sua sponte reopening, we have also recognized that we *do* have limited jurisdiction to review certain legal issues underpinning such decisions. For example, we recently explained that while we lack "jurisdiction to review the BIA's decision not to reopen removal proceedings *sua sponte*," *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013), we nevertheless retain jurisdiction to "review 'constitutional claims or questions of law' raised in a petition for review," *id.* (quoting 8 U.S.C. § 1252(a)(2)(D));

-17-

*accord Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009).  There is increasing circuit support for this proposition from our sister circuits, as well. *See, e.g.*, *Pllumi v. Att'y Gen. of U.S.*, 642 F.3d 155, 160 (3d Cir. 2011) ("[W]e may exercise jurisdiction to the limited extent of recognizing when the BIA has relied on an incorrect legal premise."); *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009) ("[W]here the Agency may have declined to exercise its *sua sponte* authority because it misperceived the legal background . . . , remand to the Agency for reconsideration in view of the correct law is appropriate.").

Accordingly, even in matters involving the Board's exercise of its discretionary authority to deny a motion to reopen sua sponte, we retain jurisdiction to review whether the Board applied the proper constitutional and legal framework in making its decision.  To be sure, this review is limited, and the Board retains the ultimate authority to decide whether or not to grant a motion to sua sponte reopen.  As such, in cases where we identify legal or constitutional error in the Board's reasoning, our response is necessarily limited to remanding to the Board "so it may exercise its authority against the correct 'legal background.'"  *Pllumi*, 642 F.3d at 160 (quoting *Mahmood*, 570 F.3d at 469).  And we emphasize that "[o]n remand, the BIA [is] then . . . free to deny or grant reopening *sua sponte*, and we . . . have no jurisdiction to review that decision."  *Id.*; *see Mahmood*, 570 F.3d at 471 (recognizing that on remand, the BIA could "choose not to exercise its *sua sponte* authority" and "that such a decision would

-18-

be unreviewable").

Having determined that we have jurisdiction to review the constitutional claims and questions of law raised in Mr. Mendiola's petition, we next proceed to address the two arguments raised by Mr. Mendiola that fall within these narrowly defined jurisdictional bounds. First, we address Mr. Mendiola's ineffective-assistance claim. We then proceed to address Mr. Mendiola's argument based on intervening changes in the law brought about by the Supreme Court's decision in *Carachuri-Rosendo*. To the extent that Mr. Mendiola raises additional claims relating to the Board's exercise of discretion in declining to sua sponte reopen that do *not* implicate constitutional claims or questions of law, we dismiss those claims for lack of jurisdiction.

### III

"We review the BIA's decision on a motion to reopen only for an abuse of discretion." *Gurung v. Ashcroft*, 371 F.3d 718, 720 (10th Cir. 2004) (brackets omitted) (quoting *Tang v. Ashcroft*, 354 F.3d 1192, 1194 (10th Cir. 2003)) (internal quotation marks omitted). Under an abuse-of-discretion standard, "any error of law is presumptively an abuse of discretion." *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005). In conducting our abuse-of-discretion analysis, we review the BIA's legal determinations de novo. *See Schubler v. Holder*, 472 F. App'x 867, 870 (10th Cir. 2012); *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011) ("In our review

-19-

of the [BIA's] decision, we decide purely legal questions *de novo*."); *Lorenzo*, 508 F.3d at 1282 (noting that we review the Board's determination of "constitutional and legal questions de novo"); *Nguyen v. INS*, 53 F.3d 310, 311 (10th Cir. 1995) ("We review the BIA's findings on questions of law de novo."); *see also Infanzon*, 386 F.3d at 1362 (finding no abuse of discretion where, *inter alia*, the BIA's "statements [were] a correct interpretation of the law").  The BIA may deny relief on a motion to reopen where, *inter alia*, "the movant has not established a prima facie case for the underlying substantive relief sought."  *INS v. Abudu*, 485 U.S. 94, 104 (1988).

In reaching a conclusion concerning the propriety of the BIA's action, "[w]e are not at liberty to search the law and the record for reasoning to support the BIA's decision because a court may not uphold an agency action on grounds not relied on by the agency."  *Mickeviciute v. INS*, 327 F.3d 1159, 1162–63 (10th Cir. 2003) (quoting *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 699 (10th Cir. 2002)) (internal quotation marks omitted).  As discussed above, in reviewing the BIA's decision whether or not to reopen removal proceedings sua sponte, our review is constrained by our limited jurisdiction; we review only constitutional claims and questions of law.

**IV**

Generally, an alien may file only one motion to reopen removal proceedings, and that motion must be filed within ninety days of the final

administrative order sought to be reopened.  8 U.S.C. §§ 1229a(c)(7)(A), (C)(i); 8 C.F.R. § 1003.2(c)(2).  It is undisputed that the motion to reopen giving rise to this appeal was numerically barred, as it was Mr. Mendiola's third such motion. It is also clear that this motion was untimely, as it was filed more than seven years after entry of the final removal order that took effect on November 9, 2004. In light of these circumstances, this appeal is ultimately focused on two arguments that Mr. Mendiola advanced to avoid these procedural bars, both of which were rejected by the Board.

First, Mr. Mendiola asserts that the Board abused its discretion in declining to reopen on the basis of his ineffective-assistance-of-counsel claim, which Mr. Mendiola has consistently asserted was insulated from the applicable time and number restrictions by the doctrine of equitable tolling.  Second, Mr. Mendiola argues that the Board erred in its determination that the intervening changes in law cited by Mr. Mendiola as a basis for sua sponte reopening did not "demonstrate[] prima facie eligibility for any immediately available forms of relief."  R. at 4.  We address each of these arguments in turn.

**A**

When Mr. Mendiola first raised his ineffective-assistance claim—which he did in his second motion to reopen—he argued that it was not barred by time or number limits because any failure to timely raise the claim was a result of his attorney's failings, and thus he was entitled to equitable tolling.  *See* Aplt.

-21-

Opening Br. at 7–8; R. at 499 ("Mr. Mendiola's motion to reopen based on ineffective assistance of counsel may equitably toll the numerical and time limitations under 8 C.F.R. § 1003.2(c)."). But, as noted above, the Board never reached the merits of the ineffective-assistance claim in ruling on the second motion to reconsider, because it concluded as a threshold matter that it lacked authority to consider the motion due to 8 C.F.R. § 1003.2(d)'s post-departure bar. In light of our intervening en banc decision in *Contreras-Bocanegra* finding the post-departure bar unlawful,[7] the Board appropriately revisited the ineffective-assistance claim in addressing Mr. Mendiola's third motion to reopen and considered its merits.[8] We now conclude that the Board did not abuse its

---

[7] In *Contreras-Bocanegra* we held that the post-departure bar regulation contravened Congress's intent to provide each noncitizen the right to file one motion to reopen, regardless of whether the noncitizen remained in or had departed from the United States. *See* 678 F.3d at 813, 816–19.

[8] The Board itself did not frame its consideration of the ineffective-assistance claim as being a response to *Contreras-Bocanegra*—indeed, the Board appears to have operated on the assumption that the post-departure bar had continuing vitality after *Contreras-Bocanegra*. As the government concedes, this assumption "misconstrue[d] this Court's reasoning" in that case. Aplee. Reply Br. at 27–28 n.5. However, as the government also correctly observes, the Board's misreading of *Contreras-Bocanegra* was ultimately harmless, given that it relied in part on other, valid bases in declining to reopen Mr. Mendiola's proceedings—*viz.*, Mr. Mendiola had failed to demonstrate the requisite prejudice for a showing of ineffective assistance of counsel, and his reliance on the change of law effected by *Carachuri-Rosendo* was unavailing, insofar as he sought to invalidate the legality of his removal. And, to the extent that Mr. Mendiola's *Carachuri-Rosendo* change-of-law argument pertains to cancellation of removal, we conclude *infra* that a remand is warranted for the BIA to clarify the legal basis for its decision, obviating the need for any further inquiry here into the possibility
(continued...)

discretion in rejecting Mr. Mendiola's ineffective-assistance claim as a basis to reopen.

To make out a claim of ineffective assistance of counsel under the Fifth Amendment's Due Process Clause, *see supra* note 6, Mr. Mendiola had to show both that his prior counsel's conduct was deficient and that he was prejudiced by his counsel's ineffectiveness. *See Akinwunmi v. INS*, 194 F.3d 1340, 1341 n.2 (10th Cir. 1999) (per curiam) ("[A]n alien must show that his counsel's ineffective assistance so prejudiced him that the proceeding was fundamentally unfair."). In this context, proof of prejudice requires that there was "a reasonable likelihood" the outcome would have been different were it not for the allegedly ineffective assistance. *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208–09 (10th Cir. 2004) (en banc).

In his motion to reopen, Mr. Mendiola argued that "he suffered prejudice due to [his] prior counsel's failure to challenge the government's charge that the 1996 and 2000 convictions involved substances under the Controlled Substances Act." Aplt. Opening Br. at 12. Specifically, Mr. Mendiola pointed to the Board's decision in *Matter of Paulus*, which held that the substance at issue in a state controlled-substance conviction must be a controlled substance under federal law

---

[8](...continued)
of any harm stemming from the Board's apparent misreading of *Contreras-Bocanegra*.

in order to render a noncitizen subject to deportation. Mr. Mendiola argued that "California law identifies at least two steroids on the controlled substances schedule that are not included in the federal list, and therefore the government could not have met its burden of establishing" that Mr. Mendiola was removable for an aggravated felony. Aplt. Opening Br. at 11. Thus, according to Mr. Mendiola, "[h]ad the *Paulus* defense been raised, it is reasonably likely that the immigration judge would have terminated removal proceedings," and "[t]he Board's failure to recognize this prejudice due to ineffective assistance of counsel was an abuse of discretion." *Id.*

In rejecting Mr. Mendiola's argument, the Board stated:

> While [Mr. Mendiola] urges that his prior counsel should have argued that he was not removable pursuant to the Board's decision in *Matter of Paulus*, [Mr. Mendiola] has not established that the specific controlled substance of "steroids" was not listed on the Federal controlled substances schedule for both 1996 and 2000. [Mr. Mendiola's] reliance on the current controlled substances schedules to assert that the California and Federal controlled substances schedules do not coincide, is misplaced. As such, [Mr. Mendiola] has not shown that he was prejudiced by his prior counsel's actions or inactions such that equitable tolling of the time and number limits is warranted.

R. at 3 (citation omitted).

The Board's determination did not constitute an abuse of discretion. As noted by the Board, Mr. Mendiola fails to recognize that the relevant inquiry is whether the substances were listed on both schedules *in 1996 and 2000*, not whether the schedules coincide today. Mr. Mendiola failed to present any

-24-

evidence to the Board of discrepancies between the state and federal schedules in 1996 and 2000 that would have resulted in a different outcome in his proceedings. Nor did he produce any evidence that his convictions for steroid possession involved substances *not* listed in the federal controlled-substances schedules in the relevant years. In other words, although Mr. Mendiola argues generally that California regulates steroids not regulated by federal law, he has not specifically alleged or demonstrated that he was convicted of possessing a substance that would not be considered a steroid under the federal controlled-substances schedules for the years of his convictions.

Accordingly, Mr. Mendiola has not demonstrated that he was prejudiced by any deficient performance of his counsel, i.e., that there is a "reasonable likelihood" that the outcome of his proceedings would have been different but for the actions or inactions of his counsel.[9] *Aguirre-Tello*, 353 F.3d at 1209. As such, the Board did not abuse its discretion in finding that Mr. Mendiola failed to establish ineffective assistance of counsel, and thus it did not rely on a mistaken

---

[9]    Indeed, although the BIA did not rely on this ground and thus nor do we, it is questionable whether Mr. Mendiola's counsel rendered deficient performance at all. Contrary to Mr. Mendiola's assertions, his prior counsel did raise the argument to the immigration judge that the steroids Mr. Mendiola was convicted of possessing were not the same type of steroids referred to in the federal schedule. The immigration judge rejected this argument and found that the steroids in Mr. Mendiola's possession were included in Schedule III of the list of federally recognized controlled substances.

view of this "constitutional claim" in deciding that sua sponte reopening was not warranted.

**B**

We turn next to Mr. Mendiola's argument that the Board erred when it determined that sua sponte reopening was not warranted based on the "fundamental change in law" effected by *Carachuri-Rosendo*. We begin with a brief discussion of the general principles relating to the Board's sua sponte authority to reopen removal proceedings. We then address the holding in *Carachuri-Rosendo*, to determine whether the Board relied on a mistake of law in denying Mr. Mendiola's petition to sua sponte reopen. While we conclude that the Board correctly apprehended the significance *vel non* of the *Carachuri-Rosendo* decision with respect to Mr. Mendiola's removability, we find that we are unable to perform a meaningful review of the Board's decision regarding Mr. Mendiola's eligibility for cancellation of removal, and thus we remand this claim to the Board so that it might more fully articulate its reasoning.

**1**

Irrespective of the otherwise applicable time and number limitations on motions to reopen, the Board possesses the authority to reopen a case sua sponte. The Board's authority to sua sponte reopen an alien's removal proceedings is

defined by regulation:

> The Board *may* at any time reopen or reconsider on its own motion any case in which it has rendered a decision. . . . The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. *The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.*

8 C.F.R. § 1003.2(a) (emphases added).  As the text of regulation makes clear, the Board's discretion in deciding whether to exercise its sua sponte authority is considerable, even to the extent that the Board may deny reopening despite a petitioner's meritorious claim for relief.  In practice, the Board generally invokes this "authority sparingly, treating it not as a general remedy for any hardships created by enforcement of the time and number limits in the motions regulations, but as an extraordinary remedy reserved for truly exceptional situations."  *In re G-D-*, 22 I. & N. Dec. 1132, 1133–34 (BIA 1999).  Indeed, the Board has said that it "must be persuaded that the respondent's situation is truly exceptional before [it] will intervene."  *Id.* at 1134; *see also In re J-J-*, 21 I. & N. Dec. 976, 984 (BIA 1997) (recognizing the Board's authority "to reopen proceedings sua sponte in exceptional circumstances").

Notwithstanding this general policy of forbearance, the Board has acknowledged that sua sponte reopening may be warranted in certain cases that involve a fundamental change in law.  *See In re G-D-*, 22 I. & N. Dec. at 1135.  Even in such cases, however, sua sponte reopening is only appropriate where the

case "manifestly turn[s] on the cited change in the law," and the change is more than an "incremental" one. *Id.* As the Board noted in *In re G-D-*:

> New case law regularly emerges from this Board and the federal courts. . . . If each incremental development in the case law were considered to be a change warranting reopening on the Board's own motion, the implications for the motions regulations and for the finality of proceedings would be profound. In our judgment, granting reconsideration or reopening in response to such "changes" would substantially erode the regulatory time and number limitations and undermine the goal of finality that we understand Congress sought to achieve.

*Id.*

Thus, for example, the Board has explained that it properly exercised its sua sponte authority to reopen in *In re X-G-W-*, 22 I. & N. Dec 71 (BIA 1998), because "[t]he statutory revision was so profound that the respondent . . . clearly acquired eligibility for relief by virtue of that particular change in the law, a change amounting to a reversal in the principles of asylum law applicable to coercive population control practices in China." *In re G-D-*, 22 I. & N. Dec. at 1135. In contrast, the Board declined to exercise its authority to sua sponte reopen in *In re G-D-* because the impact of the change in law was "less obvious" and "far more subtle." *Id.* In that case, the Board observed that even if it reopened the case, it "would be required to completely readjudicate the respondent's claim in light of [the] new precedent before [it] could discern whether it would have any impact on the outcome of [the respondent's] claim. *Id.* at 1135–36. As the Board noted, "[e]ngaging in such a readjudication would be

tantamount to granting reconsideration, with its concomitant expenditure of adjudicatory resources, even if [the Board] were ultimately to determine that the new precedent did not alter the outcome." *Id.* at 1136.

With these general principles in mind, we turn now to Mr Mendiola's argument that the Board abused its discretion in denying his motion to sua sponte reopen based on the change in law effected by *Carachuri-Rosendo*.

**2**

Mr. Mendiola advances two distinct arguments for why the Supreme Court's 2010 decision in *Carachuri-Rosendo* represented a fundamental change in law warranting sua sponte reopening. First, he argues that the case "was a fundamental change in law warranting reopening because [he] was not removable for an aggravated felony conviction, as charged in the Notice to Appear." Aplt. Opening Br. at 26. Second, he argues that reopening is warranted because if under *Carachuri-Rosendo* he was not convicted of an aggravated felony, he is now—in light of that case—eligible for cancellation of removal. As we have already explained in discussing our limited jurisdiction to review decisions of the Board regarding sua sponte reopening, we cannot and do not review the Board's actual decision not to exercise sua sponte authority. Rather, our review is limited to determining whether, in exercising its discretion, the Board relied on erroneous understanding of a question of law. Thus, we inquire only whether the Board erred as a matter of law in concluding that *Carachuri-Rosendo* did not represent

-29-

the sort of fundamental change that the Board has recognized as a basis for sua sponte reopening—that is, a shift by which Mr. Mendiola "clearly acquired eligibility for relief." *In re G-D-*, 22 I. & N. Dec. at 1135.

The changes caused by *Carachuri-Rosendo* can be succinctly described. At the time of the Board's 2004 removal order, a state felony conviction for possession of a controlled substance constituted an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B). As noted above, the Supreme Court partly modified this in *Lopez*, which clarified that in order to qualify as an "aggravated felony" for immigration law purposes, a state drug conviction must be punishable as a felony under *federal* law. 549 U.S. at 55, 60. *Carachuri-Rosendo* elaborated further on this topic, clarifying the application of *Lopez* in situations where an alien is convicted of a state misdemeanor that is, under federal law, punishable as a felony. *See Carachuri-Rosendo*, 560 U.S. at 580. Specifically, the Court considered whether a lawful permanent resident convicted of two state-law misdemeanor drug offenses was removable for an aggravated felony under federal law. *See id*. at 570, 581–82. The Court held that although a second or subsequent simple-possession offense is technically punishable as a felony under federal law as recidivist possession, *see* 21 U.S.C. § 844(a), such a conviction does not qualify as an aggravated felony under the INA unless the state conviction was *itself* enhanced based on the fact of the prior conviction, i.e., unless the defendant was actually convicted in state court of a felony *as a recidivist*. *See Carachuri-*

-30-

*Rosendo*, 560 U.S. at 581–82 ("We hold that when a defendant has been convicted of a simple possession offense that has not been enhanced based on the fact of a prior conviction, he has not been 'convicted' under § 1229b(a)(3) of a 'felony punishable' as such 'under the Controlled Substances Act.'").

**a**

According to Mr. Mendiola, the impact of *Carachuri-Rosendo*, then, is that he can no longer be held to have committed an aggravated felony by virtue of his two state misdemeanor convictions. However, the Board correctly understood that—even if Mr. Mendiola was correct about this—*Carachuri-Rosendo*'s effect on the question of his removability would be negligible. The problem for Mr. Mendiola on this score is that regardless of whether or not he was removable as an aggravated felon, he was still lawfully removable in 2004. That is, notwithstanding the *Carachuri-Rosendo* decision, Mr. Mendiola was removable in 2004 based on the uncontested fact that he had been convicted of a state offense "relating to a controlled substance (as defined in section 802 of title 21)." 8 U.S.C. § 1227(a)(2)(B)(i).

*Carachuri-Rosendo* thus hardly looks like the sort of profound reversal that prompted sua sponte reopening in *In re X-G-W-*, at least as it concerns Mr. Mendiola's removability. Our review confirms the Board's conclusion that—whatever effects the case may have had—it did not make Mr. Mendiola eligible for relief based on any change to his legal removability. Accordingly, we

are confident that the Board did not rely on an incorrect legal understanding of *Carachuri-Rosendo* in concluding that, as to Mr. Mendiola's case, the "extraordinary intervention of [the Board's] sua sponte authority," *In re G-D-*, 22 I. & N. Dec. at 1135, was not warranted.

**b**

We cannot say with the same confidence that the Board made its decision based on a correct understanding of *Carachuri-Rosendo*'s effect on Mr. Mendiola's eligibility to seek cancellation of removal. In rejecting Mr. Mendiola's claim that *Carachuri-Rosendo* rendered him eligible for this previously foreclosed avenue of relief, the Board found that, because Mr. Mendiola did not contest that his removal was lawful,

> this removal served to terminate [his] permanent residence status. *See Matter of Lok*, 18 I&N Dec. 101, 106 (BIA 1981); *Matter of Mosqueda*, 14 I&N Dec. 55, 56–57 (R.C. 1972). Consequently, [Mr. Mendiola] is statutorily ineligible for cancellation of removal under section 240A(a) of the Act[, 8 U.S.C. § 1229b(a),] because he is no longer lawfully admitted for permanent residence.

R. at 4. Put simply, the Board concluded that the lifting of one categorical ban on cancellation of removal (for aggravated felons) was immaterial to Mr. Mendiola's access to that remedy because he remained subject to another (for those whose permanent residence has been terminated through removal).

What gives us pause—and ultimately prompts us to remand this particular issue back to the Board for elaboration—is that the Board did not attempt to

reconcile this rationale with *Carachuri-Rosendo* itself.  We note, as did Mr.

Mendiola in his briefing, that the language of a footnote in that opinion arguably

contradicts the Board's apparent assumption that removal, or an order of removal,

can operate as a categorical bar on seeking cancellation of removal.  Specifically,

the Court stated there:

> Since the Court of Appeals issued its decision in this case,
> Carachuri-Rosendo has been removed.  Neither party, however,
> has suggested that this case is now moot.  If Carachuri-Rosendo
> was not convicted of an "aggravated felony," and if he continues
> to satisfy the requirements of 8 U.S.C. § 1229b(a), he may still
> seek cancellation of removal even after having been removed.

*Carachuri-Rosendo*, 560 U.S. at 573 n.8 (citation omitted).  At least one of our

sister circuits has recently interpreted this language as "stat[ing] that a petition

for review is not rendered moot by merit of the petitioner's removal," and that

such a petitioner thus "may still seek cancellation of removal from abroad."

*Garcia v. Holder*, --- F.3d ----, 2014 WL 2937020, at *2 (5th Cir. 2014); *see also*

*Espinal v. Holder*, 636 F.3d 703, 707 n.2 (5th Cir. 2011) ("Although Espinal has

*already been removed* . . . the case is not moot if (1) Espinal was not convicted of

an 'aggravated felony' and (2) he continues to satisfy the requirements of 8

U.S.C. § 1229b(a)." (citing *Carachuri-Rosendo*, 560 U.S. at 573 n.8)).

The tension between the Board's apparent rationale and the language of the

*Carachuri-Rosendo* footnote, combined with the fact that the Board made no

attempt to reconcile the two or to address the apparent conflict, raises a particular

problem for this court in light of the settled principle that "[w]e are not at liberty to search the law and the record for reasoning to support the BIA's decision because a court may not uphold an agency action on grounds not relied on by the agency." *Mickeviciute*, 327 F.3d at 1162–63 (quoting *St. Anthony Hosp.*, 309 F.3d at 699) (internal quotation marks omitted); *accord Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) ("[O]ur review is confined to the reasoning given by the [agency], and we will not independently search the record for alternative bases to affirm." (second alteration in original) (quoting *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004)) (internal quotation marks omitted)); *Ritonga*, 633 F.3d at 974–75 (same); *Carpio v. Holder*, 592 F.3d 1091, 1103 (10th Cir. 2010) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." (alteration in original) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (internal quotation marks omitted)). That is, we can affirm the decision of the Board only on the same grounds relied on *by* the Board, but in the present case we are unable to discern on what basis, if any, the Board resolved the apparent tension noted here, and "[w]e cannot perform a meaningful review where the Board does not sufficiently articulate its reasoning." *Mickeviciute*, 327 F.3d at 1162. Moreover, if there *is* some way of reconciling the Board's decision with *Carachuri-Rosendo* such that we could affirm on that basis, we are not aided in identifying that basis

-34-

by the government, which inexplicably fails to address this issue at all, notwithstanding that Mr. Mendiola squarely raised it in his opening brief in several places.[10] *See* Aplee. Br. at 26 (stating only that the Board "properly concluded" that "the execution of Mr. Mendiola's removal order . . . terminated his prior lawful permanent resident status," and citing three pre-*Carachuri-Rosendo* cases).[11]

Because the Board's decision does not articulate its reasoning on this issue in a manner that permits the court to engage in meaningful review, we now remand to the Board with instructions to consider the effect of *Carachuri-Rosendo* footnote eight on removed persons' eligibility for cancellation of

---

[10]     Mr. Mendiola specifically invoked footnote eight of *Carachuri-Rosendo* no less than four times in his opening brief. *See* Aplt. Opening Br. at 2 ("*Carachuri-Rosendo* . . . itself recognizes that a noncitizen may proceed with his immigration case from outside of the Unites States when there is a change in law."); *id.* at 21 ("[T]he Supreme Court . . . instructed that a petitioner could continue with his case *after* a removal order was executed, if he had not been convicted of an aggravated felony offense."); *id.* at 31 ("[I]n *Carachuri-Rosendo*, [the Supreme Court] not[ed] that even after the execution of a removal order, the petitioner could seek cancellation of removal if he had not been convicted of an aggravated felony."); *id.* at 31–32 ("Petitioner, then, is in the same position as *Carachuri-Rosendo* himself, and the Supreme Court acknowledged that assuming he was not convicted of an aggravated felony, Carachuri-Rosendo could apply for cancellation of removal even after the deportation order was executed.").

[11]     We do not mean to suggest, however, that we could affirm on the basis of an *alternative* ground offered by the government, if it offered one. Rather, we highlight the government's silence here only to emphasize that, to the extent there might have been some way of interpreting the plain terms of the Board's decision such that the decision was not in tension with *Carachuri-Rosendo*, the government has waived its obvious opportunity to offer us such an interpretation.

removal, and to explain—if it persists in its conclusion that Mr. Mendiola is, as a consequence of his removal, categorically barred from seeking cancellation—on what basis it purports to reconcile that conclusion with the seemingly contradictory indication in footnote eight. *Cf. Mukhia*, 507 F. App'x at 827–28 ("In this case, we cannot perform a meaningful review of the Board's decision, which fails to sufficiently articulate its reasoning. We therefore remand to the BIA for further explanation of the bases for its denial of [the petitioner's] motion to reopen." (citation omitted)); *Krylov v. Holder*, 407 F. App'x 290, 293–95 (10th Cir. 2011) (remanding where "[b]ased on our review of the BIA's order . . . we find that we cannot perform a meaningful review because the BIA did not sufficiently articulate its reasoning" (brackets omitted) (internal quotation marks omitted)); *Mickeviciute*, 327 F.3d at 1164–65 (noting that where an agency's decision fails to articulate a reviewable rationale, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or *explanation*." (internal quotation marks omitted)). We observe once again, however, the ultimate decision whether or not to grant sua sponte reopening remains entirely in the Board's discretion.

## V

For the foregoing reasons, Mr. Mendiola's petition is **GRANTED** in part and **DENIED** in part. With respect to Mr. Mendiola's legal and constitutional claims relating to his *removability*—that is, his ineffective-assistance claim and,

-36-

in part, his change-of-law claim based on the Supreme Court's opinion in *Carachuri-Rosendo*—Mr. Mendiola's petition is **DENIED** and the decision of the Board is **AFFIRMED**. With respect to Mr. Mendiola's claim that under *Carachuri-Rosendo* he alternatively is eligible to apply for *cancellation of removal*, we **GRANT** his petition and **REMAND** to the Board to clarify the legal basis for its decision, and—in light of that clarification—to rule on Mr. Mendiola's motion for sua sponte reopening as it sees fit in the exercise of its discretion. Finally, to the extent that Mr. Mendiola's briefs raise any claims challenging the Board's exercise of discretion in refusing to reopen sua sponte, we **DISMISS** for lack of jurisdiction.

Entered for the Court

JEROME A. HOLMES
Circuit Judge