**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JESUS OLIVAS-MELENDEZ,

    Petitioner,

v.

ROBERT M. WILKINSON,[*] Acting
United States Attorney General,

    Respondent.

No. 19-9601
(Petition for Review)

_____

**ORDER AND JUDGMENT[†]**
_____

Before **McHUGH**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Twenty years after his removal proceedings became final and he was removed

from the United States, Jesus Olivas-Melendez filed a motion to reopen. He relies on

intervening caselaw to argue the criminal conviction for which he was removed is not

a removable offense. Mr. Olivas-Melendez attempted to overcome the untimeliness

of his motion in two ways: he argued the ninety-day time limit should be equitably

tolled and that the agency should *sua sponte* reopen his removal proceedings in

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Robert M. Wilkinson, Acting Attorney
General, is substituted for William P. Barr as the respondent in this appeal.

[†] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

response to a fundamental change in the law. First the Immigration Judge ("IJ") and then the Board of Immigration Appeals ("BIA") rejected both arguments. Mr. Olivas-Melendez now asks for review from this court. We deny Mr. Olivas-Melendez's petition for review on the equitable tolling argument, exercising jurisdiction under 8 U.S.C. § 1252, and we dismiss the petition for lack of jurisdiction on the challenge to the BIA's failure to *sua sponte* reopen the removal proceedings.

## I.  BACKGROUND

Jesus Olivas-Melendez was lawfully admitted to the United States on February 5, 1991. He is a native and citizen of Mexico. On March 4, 1998, Mr. Olivas-Melendez was convicted of threatening with or using a dangerous weapon in a fight or quarrel in violation of Utah Code Ann. § 76-10-506. *See* Administrative Record ("AR") at 95. The government initiated removal proceedings against Mr. Olivas-Melendez shortly after he was convicted, claiming he was removable because he was convicted under a statute involving "a firearm or destructive device (as defined in Section 921(a) of Title 18, United States Code)." *Id.* The removal proceedings were thus premised on Mr. Olivas-Melendez having a conviction for "threatening with or using a dangerous weapon, to-wit: a firearm, in a fight or quarrel, in violation of Title 76, Chapter 10, Section 506 of the Utah Code Annotated 1953, as amended." *Id.*

The government served Mr. Olivas-Melendez with a Notice to Appear on March 19, 1998, which was filed on March 24, 1998. *Id.* at 95–96. The Notice did not

2

list the date or time of the removal hearing.[1] However, also on March 24, 1998, the government issued a Notice of Hearing in Removal proceedings, which listed the date and time of the hearing.

At a March 26, 1998, hearing before an IJ, Mr. Olivas-Melendez admitted facts from which the IJ determined he was subject to removal. Mr. Olivas-Melendez did not request relief from removal, and the IJ ordered him removed. On April 30, 1998, Mr. Olivas-Melendez was removed to Mexico.

Over twenty years later, on October 15, 2018, Mr. Olivas-Melendez filed a counseled Motion to Reopen and Vacate the Respondent's Order of Removal before the IJ. He argued the order "should be vacated and reopened *sua sponte*, or according to equitable estoppel, due to the dramatic changes resulting from the recent decisions of the Supreme Court and the BIA involving the categorical and modified categorical approaches" to determining whether a state conviction falls within a federal criminal statute. *Id.* at 71. To place Mr. Olivas-Melendez's timeliness arguments and the IJ and BIA rulings in context, we provide a brief overview of the relevant legal background.

---

[1] Mr. Olivas-Melendez preserved, and continues to preserve, the argument that his original removal proceedings were conducted without jurisdiction because the Notice to Appear he received was defective. *See* AR at 16 & n.1 (presenting this argument on appeal to BIA); *id.* at 4 (BIA decision rejecting this argument); Appellant Br. at 13. However, he concedes this court's decision in *Lopez-Munoz v. Barr*, 941 F.3d 1013 (10th Cir. 2019), forecloses this argument. We follow our precedent and deny his petition on this argument.

### A. *Legal Background*

The merits issue here is whether Mr. Olivas-Melendez's 1998 Utah conviction made him removable under the Immigration and Nationality Act ("INA"). In finding grounds for removal, the BIA necessarily concluded that Mr. Olivas-Melendez's Utah conviction constituted an offense involving a firearm under the INA. The soundness of that decision depends on how we define Mr. Olivas-Melendez's crime of conviction. According to Mr. Olivas-Melendez, the legal framework for answering that question has changed so dramatically that his delay in filing a motion to reopen his removal proceedings should be excused.

"[I]n ordinary speech words such as 'crime,' 'felony,' 'offense,' and the like sometimes refer to a generic crime, . . . and sometimes refer to the specific acts in which an offender engaged on a specific occasion." *Nijhawan v. Holder*, 557 U.S. 29, 33–34 (2009). The categorical approach to determining whether a state conviction falls within a federal statute applies when a federal law refers to a generic crime. That approach requires courts "look not to the facts of the particular prior case, but rather to the state statute defining the crime of conviction." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007). "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts" meet the requirements of the federal statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (alterations in original) (quoting *Johnson v. United States,* 559 U.S. 133, 137 (2010)).

4

"But this rule is not without qualification." *Id.* at 191. Where a single state statute "contain[s] several different crimes, each described separately, . . . a court may determine which particular offense the noncitizen was convicted of by examining" a limited class of documents. *Id.* This is referred to as the "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 257 (2013). The modified categorical approach may be used only when a statute "lists multiple elements disjunctively," not when a statute "enumerates various factual means of committing a single element." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

The categorical approach has been used in immigration law for over a century. *Moncrieffe*, 569 U.S. at 191. But modern categorical approach jurisprudence is usually traced to *Taylor v. United States*, 495 U.S. 575 (1990), where the Supreme Court dealt with the categorical approach in the context of the Armed Career Criminal Act ("ACCA"). *See, e.g.*, *Descamps*, 570 U.S. at 260–61. *Taylor* also contained the seeds of the modified categorical approach. *Id.* at 261 ("*Taylor* recognized a 'narrow range of cases' in which sentencing courts—applying what we would later dub the 'modified categorical approach'—may look beyond the statutory elements to 'the charging paper and jury instructions' used in a case." (quoting *Taylor*, 495 U.S. at 602)).

In *Descamps*, the Supreme Court held "courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." 570 U.S. at 258. This decision did not stake new ground—the Court said its "caselaw explaining the categorical approach and its

5

'modified' counterpart all but resolves this case." *Id.* at 260. And in *Moncrieffe*, the Court determined where "facts giving rise to the [predicate controlled substance] offense establish a crime that may be either a felony or a misdemeanor, depending upon the presence or absence of certain factors that are not themselves elements of the crime," the conviction for the predicate offense must categorically establish the factors resulting in the offense being a felony to fall within a federal statute mandating removal for aggravated felonies. 569 U.S. at 196.

In *Mathis*, the Court summarized this history: "*Taylor* set out the essential rule governing ACCA cases more than a quarter century ago. . . . [A] sentencing judge may look only to 'the elements of the [offense], not to the facts of [the] defendant's conduct.'" 136 S. Ct. at 2251 (second and third alterations in original) (quoting *Taylor*, 495 U.S. at 601). "That simple point became a mantra" in immigration cases as well as ACCA cases. *Id.* at 2251 & n.2. The Court explained in *Mathis* that its prior decisions "made clear that when the Court had earlier said (and said and said) 'elements,' it meant just that and nothing else." *Id.* at 2255. Accordingly, a statute setting forth alternative *elements* allows courts to use the modified categorical approach; but a statute setting forth alternative *means of satisfying an element* does not allow courts to review underlying documents. *Id.* at 2256.

The BIA subsequently held "that the understanding of statutory 'divisibility' embodied in *Descamps* and *Mathis* applies in immigration proceedings nationwide to the same extent that it applies in criminal sentencing proceedings." *Matter of Chairez-Castrejon*, 26 I. & N. Dec. 819, 819–20 (B.I.A. 2016) (*Chairez III*). And it

6

denied a request from DHS to reconsider. *Matter of Chairez-Castrejon*, 27 I. & N.

Dec. 21, 21 (B.I.A. 2017) (*Chairez IV*).

## B. The IJ and BIA Removal Decisions

Mr. Olivas-Melendez was convicted in 1998 of violating Utah Code Ann.

§ 76-10-506. At the time, that statute read, in full:

> Every person, except those persons described in Section 76-10-503, who, not in necessary self defense in the presence of two or more persons, draws or exhibits *any dangerous weapon* in an angry and threatening manner or unlawfully uses the same in any fight or quarrel is guilty of a class A misdemeanor.

Utah Code Ann. § 76-10-506 (LexisNexis 1998) (emphasis added). Mr. Olivas-

Melendez was charged as removable because he was "convicted under any law of

purchasing, selling, offering for sale, exchanging, using, owning, possessing, or

carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange,

use, own, possess, or carry, any weapon, part, or accessory *which is a firearm or

destructive device*." 8 U.S.C.S. § 1227(a)(2)(C) (LexisNexis 1998) (codifying INA

§ 237(a)(2)(C)) (emphasis added); *see* AR at 95.[2]

The crux of Mr. Olivas-Melendez's argument before the IJ was that under the

categorical approach, his crime was not a firearms violation. According to

Mr. Olivas-Melendez, because the Utah statute under which he was convicted

criminalizes firearms and other dangerous weapons, the statute criminalized some

---

[2] 8 U.S.C. § 1227(a)(2)(C) is unchanged; Utah Code Ann. § 76-10-506 was amended in 2010. Weapons Revisions, 2010 Utah Laws Ch. 361 (H.B. 78). Mr. Olivas-Melendez's briefing quotes the current version of the Utah statute, not the version he was convicted under.

conduct which is not categorically a firearms violation under the INA. Developments in categorical and modified categorical approach jurisprudence, he argued, now establish that the modified categorical approach may not be applied to that statute. As a result, his Utah offense may not be considered a firearms violation for the purposes of the INA.

The IJ did not reach Mr. Olivas-Melendez's merits argument. Instead, the IJ found the motion "untimely and precluded by law." AR at 67. She noted the motion was filed twenty years after the removal order, but the statutory period for filing a motion to reopen was ninety days. The IJ also rejected Mr. Olivas-Melendez's argument that he was entitled to equitable tolling of that ninety-day filing period, finding that Mr. Olivas-Melendez had not "provide[d] sufficient evidence that he acted diligently during the entire twenty year period he seeks to have tolled or identif[ied] an extraordinary circumstance which prevented him from pursuing his case." *Id.*

In the alternative, Mr. Olivas-Melendez asked the agency to exercise its *sua sponte* discretion to reopen his removal proceedings, claiming there had been a fundamental change in the law affecting the validity of his removal. The IJ ruled that *sua sponte* reopening was not warranted. She relied upon the agency's internal rule distinguishing fundamental changes in the law from incremental changes. In the former case, the agency may exercise its discretion to reopen a removal proceeding. *Matter of G-D-*, 22 I. & N. Dec. 1132, 1135–36 (B.I.A. 1999). In contrast, where the agency views the change in the law as occurring incrementally over time, it does not

view the legal developments as grounds for exercising its discretion to reopen the removal proceedings. *Id.* at 1135. Because the IJ determined there had been no fundamental change in law, she refused to exercise the agency's discretion to reopen Mr. Olivas-Melendez's removal proceedings.

Mr. Olivas-Melendez appealed to the BIA. He argued *sua sponte* reopening and equitable tolling were warranted due to significant changes in the law.

The BIA affirmed the IJ's decision. The BIA agreed with the IJ's conclusion that Mr. Olivas-Melendez was not entitled to equitable tolling, "albeit for different reasons." AR at 4. The BIA assumed, without deciding, that Mr. Olivas-Melendez needed to show he exercised due diligence only between *Chairez IV*, in 2017, and his filing nearly a year and a half later. *See id.* at 4 n.3 ("We do not rely on the [IJ's] assertion that the respondent must show that he exercised due diligence during the entire 20-year period between the removal order and the filing of his motion to reopen."). That is, the BIA measured Mr. Olivas-Melendez's due diligence from the last decision he claims made significant changes to the application of the categorical approach. But even assuming Mr. Olivas-Melendez's failure to file prior to *Chairez IV* was excused, the BIA held he had not shown due diligence for the period from that decision to the filing of his 2018 motion. As a result, the BIA held equitable tolling was not warranted.

Next, the BIA held *sua sponte* reopening was not warranted because Mr. Olivas-Melendez had "not identified any exceptional circumstances warranting such remedy." *Id.* at 5. And, like the IJ, the BIA reasoned that the precedents cited by

9

Mr. Olivas-Melendez did not constitute fundamental changes in the law, but rather incremental development, making them "not grounds for sua sponte reopening." *Id.*

Mr. Olivas-Melendez thereafter filed the instant petition for review. Once again, he claims equitable tolling should have excused his tardy motion to reopen and, in the alternative, that the BIA should have *sua sponte* reopened his removal proceedings despite the untimeliness of his motion.

## II. DISCUSSION

"Where, as here, the BIA affirms an [IJ's] decision in a single Board member's brief order, the BIA's affirmance is the final agency decision, and we limit our review to the grounds for the BIA's decision." *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1360 (10th Cir. 2019). To the extent the BIA relied upon or incorporated the IJ's order, however, we may consult that decision as well. *Gutierrez-Orozco v. Lynch*, 810 F.3d 1243, 1245 (10th Cir. 2016). Our review of the denial of a motion to reopen is for abuse of discretion. *Molina v. Holder*, 763 F.3d 1259, 1263 (10th Cir. 2014). "The [BIA] abuses its discretion when it fails to provide a rational explanation, inexplicably deviates from established policies, lacks any reasoning, or contains only conclusory explanations." *Id.* "We review legal issues de novo, though we may defer to an agency's reasonable interpretation of the statutes it administers."[3]

---

[3] Mr. Olivas-Melendez argues this deference "now has been tempered by the Supreme Court's decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)." Reply Br. at 3. But deference does not apply in this case because neither Mr. Olivas-Melendez nor the government is asking us to interpret a statute or agency regulation. Rather, our review is limited to principles of equitable tolling and *sua sponte* reopening.

*Velasco v. Holder*, 736 F.3d 944, 946 (10th Cir. 2013). Findings of fact are reviewed for substantial evidence—that is, for "whether the evidence relied upon by the [BIA] was of sufficient quality and substantiality to support the rationality of the judgment." *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1298 (10th Cir. 2011) (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)).

Mr. Olivas-Melendez argues that under *Chairez III*, *Chairez IV*, *Descamps*, *Moncrieffe*, and *Mathis*, he was not removable as charged because his statute of conviction does not categorically involve firearms. Although Mr. Olivas-Melendez's removal charge indicates he used a firearm, he contends that under the modern understanding of the categorical approach, the Agency would be limited to an examination of the statutory elements and could not consider his underlying conduct or charging document. We need not reach the merits of his contention, however, because, like the IJ and the BIA, we hold the untimeliness of Mr. Olivas-Melendez's motion is fatal to his claim.

Recognizing his motion was made after the statutory deadline, Mr. Olivas-Melendez argues he is eligible for equitable tolling because he "acted promptly and in good faith" by filing "within a reasonable time frame following his discovery of the dramatic changes in Supreme Court and BIA jurisprudence regarding the 'categorical approach.'" Appellant Br. at 14. Alternatively, he argues the BIA abused its discretion in refusing to *sua sponte* reopen his case because categorical approach decisions worked a fundamental change in the law.

11

The government first argues the agency did not abuse its discretion in holding Mr. Olivas-Melendez should not receive equitable tolling. Second, it contends this court lacks jurisdiction to review the agency's decision not to reopen *sua sponte* because Mr. Olivas-Melendez has not shown the agency "misapprehend[ed], misappl[ied], or ignore[d] its precedents" or otherwise committed a constitutional or legal error. Appellee Br. at 11. We agree with both positions.

## A. *Equitable Tolling*

The ninety-day deadline to file a motion to reopen passed two decades before Mr. Olivas-Melendez submitted one. Yet, Mr. Olivas-Melendez argues the lapse of time should be subject to equitable tolling because upon learning of a "fundamental change in the law. . . , he acted with due diligence." Appellant Br. at 22. The government argues the BIA did not abuse its discretion in holding Mr. Olivas-Melendez did not demonstrate due diligence between the issuance of *Chairez IV* and the filing of his motion to reopen.

Equitable tolling requires a showing of due diligence in pursuit of the case during the time period a petitioner seeks to toll. *Mahamat v. Gonzales*, 430 F.3d 1281, 1283 (10th Cir. 2005). The BIA here rested its decision solely on Mr. Olivas-Melendez's inadequate explanation of "how he exercised due diligence for the period from the issuance of [*Chairez IV* on April 24, 2017] to the filing of his motion on October 15, 2018." AR at 4; *see also id.* at 4 & n.3 (explicitly not incorporating the IJ's determination that Mr. Olivas-Melendez had to show, and had failed to show, due diligence for the whole twenty-year period between his initial removal and his

12

request to reopen). This court's review is therefore limited to that period. *Escobar-Hernandez*, 940 F.3d at 1360.

In his opening brief, Mr. Olivas-Melendez contends the starting line for acting with due diligence is when a party learns of "changed circumstances." Appellant Br. at 22. He then asserts he learned about the legal developments relevant here after being referred to an attorney "sometime in summer of 2018," and "took prompt action to hire an attorney and file his" motion. *Id.* In reply, he appears to suggest a different series of events. After discussing the changes in the law, which he states came as late as 2017, Mr. Olivas-Melendez argues: "From that time on, [he] acted promptly to find an attorney, acquire the financial resources to pay the attorney's fees, and allow the attorney to develop a comprehensive" motion to reopen. Reply Br. at 5. He claims, "It is not unreasonable that it required eighteen months to take active steps in order to respond" to the changes in the law. *Id.* at 6. And at oral argument, counsel informed us that, because he wanted to wait on further development of the law, he allowed three months to lapse after Mr. Olivas-Melendez contacted him before filing the motion.

Contrary to Mr. Olivas-Melendez's statement that he "articulated each of the steps . . . necessary for him to follow in order to find and retain legal counsel," Reply. Br. at 5–6, the Administrative Record is almost devoid of any mention of why he did not file immediately after *Chairez IV*. In his original motion to reopen, Mr. Olivas-Melendez stated, "[s]ince the 2017 precedent was issued by the BIA, [he] had] acted promptly through counsel to submit the instant motion and should be

13

entitled to equitable estoppel," without elaboration. AR at 71–72. Before the BIA, Mr. Olivas-Melendez's argument was even more threadbare: "[E]ligibility for equitable tolling requires that once the respondent learned of the changed circumstances, . . . he acted with due diligence. . . . Mr. Olivas-Melendez did just that." *Id.* at 27.

The BIA does not abuse its discretion in denying a request for equitable tolling where the only profession of due diligence is a "conclusory statement." *Suarez-Sanchez v. Lynch*, 640 F. App'x 756, 759 (10th Cir. 2016) (unpublished). And Mr. Olivas-Melendez is responsible for the "absence of evidence favorable to equitable tolling" because he bore the burden of persuasion on the motion to reopen. *Galvez Piñeda v. Gonzales*, 427 F.3d 833, 839 (10th Cir. 2005). The BIA did not abuse its discretion in holding Mr. Olivas-Melendez had not provided an adequate explanation of due diligence on this record.

But even if the arguments Mr. Olivas-Melendez now makes had been properly presented to the BIA, he still would not be entitled to equitable tolling. Mr. Olivas-Melendez argues the BIA erred because equitable tolling should include the period from *Chairez IV* through "sometime in summer of 2018" when he learned about the legal developments. Due diligence, however, includes a requirement that a party keep reasonably abreast of the law. Indeed, we have warned that, "ignorance of the law . . . generally does not excuse prompt filing," even for a pro se litigant. *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) (quoting *Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir. 1999)); *see also Trimble v. Hansen*, 764 F. App'x 721, 726 (10th Cir. 2019)

14

(unpublished) ("[W]ithout more, a party's ignorance of the law and pro se status do not give rise to equitable tolling.").

Even more harmful to Mr. Olivas-Melendez's position is his suggestion that he should be given the same leeway as a plaintiff who belatedly discovers fraud. The case he cites for the proposition that fraud may equitably toll a deadline states that a fraud victim must exercise reasonable diligence in discovering the fraud. *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993). Indeed, Mr. Olivas-Melendez recognizes the test is not, as he later states, when "the respondent learned of the changed circumstances," but rather when such circumstances "should have been[] discovered by a reasonable person in the situation." Appellant Br. at 22. Here, Mr. Olivas-Melendez provides no explanation for why he could not, through the exercise of reasonable diligence, have learned about *Chairez IV* shortly after it was issued in April of 2017.[4]

In sum, Mr. Olivas-Melendez has not shown he acted with due diligence between the decision in *Chairez IV* and his filing eighteen months later. Accordingly, the BIA did not abuse its discretion in denying him the benefit of equitable tolling and finding his motion untimely.

---

[4] Mr. Olivas-Melendez also argues that eighteen months—from the 2017 decision in *Chairez IV* to the filing of his motion—is a reasonable amount of time to obtain an attorney and submit a filing. But he makes this argument for the first time in reply, and it is therefore waived. *Lopez v. Holder*, 495 F. App'x 889, 891 (10th Cir. 2012) (unpublished) (citing *United States v. Harrell,* 642 F.3d 907, 918 (10th Cir. 2011)).

15

## B. *Sua Sponte Reopening*

Mr. Olivas-Melendez next asks us to reverse the BIA's decision not to *sua sponte* reopen the removal proceedings. The government argues the BIA's decision is beyond this court's jurisdiction because the BIA made the decision not to reopen on the merits. In response, Mr. Olivas-Melendez urges us to depart from well-settled precedent that courts generally lack jurisdiction to review *sua sponte* agency decisions. Alternatively, Mr. Olivas-Melendez argues we "ha[ve] jurisdiction to review whether the IJ and BIA properly considered accepting *sua sponte* reopening at all." Reply at 10. He contends the BIA here did not properly consider reopening because it accepted the IJ's finding despite her failure to consider the relevant cases "in the aggregate." *Id.* Mr. Olivas-Melendez argues that if so considered the cases "do constitute a major change in the law." *Id.*

Usually, we lack "jurisdiction to consider [a] petitioner's claim that the BIA should have exercised its *sua sponte* power to reopen his case." *Belay-Gebru v. INS*, 327 F.3d 998, 1000 (10th Cir. 2003); *see also Jimenez v. Sessions*, 893 F.3d 704, 708–09 (10th Cir. 2018). The lack of regulatory restrictions on this power means "we have no meaningful standard against which to judge the BIA's exercise of its discretion." *Belay-Gebru*, 327 F.3d at 1001. Accordingly, Mr. Olivas-Melendez's first argument is a non-starter because he asks us to depart from binding precedent.

Nor does Mr. Olivas-Melendez's post-argument submission of *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020), give us grounds to depart from that

16

precedent.[5] *Guerrero-Lasprilla* merely recognized that mixed questions of law and fact fell within the statutory term "questions of law," over which we have jurisdiction in immigration cases. *Id.* at 1069. But nothing in *Guerrero-Lasprilla* speaks to our jurisdiction to review the BIA's discretion to grant *sua sponte* relief. Thus, it does not undermine our holding in *Belay-Gebru* that the decision whether to grant *sua sponte* reopening is fundamentally an exercise of agency discretion over which we lack jurisdiction. 327 F.3d at 1000. *See also Infanzon v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004) ("[W]e do not have jurisdiction to consider petitioner's claim that the BIA should have sua sponte reopened the proceedings . . . because there are no standards by which to judge the agency's exercise of discretion.").

It is true that we are empowered to consider the correctness of the BIA's legal determination that it lacks discretion to reopen a removal proceeding *sua sponte*. *See Reyes-Vargas v. Barr*, 958 F.3d 1295, 1300 (10th Cir. 2020) (holding the court had jurisdiction to review the BIA's determination that the IJ lacked jurisdiction to reopen). Once the BIA exercises that discretion, however, we lack jurisdiction over the agency's ultimate determination of whether reopening should be allowed. *Id.*

Mr. Olivas-Melendez argues this case is "similar to *Reyes-Vargas* in which the BIA didn't review the IJ's findings at all," because the BIA did not "actually

---

[5] "[A] superseding contrary decision by the Supreme Court" would allow us to depart from a prior precedential decision. *United States v. Elliott*, 937 F.3d 1310, 1316 n.5 (10th Cir. 2019) (quotation marks omitted). But, as we explain, *Guerrero-Lasprilla* is not contrary to our prior decisions and accordingly does not allow us to depart from them.

17

engage[] in a discretionary determination," instead simply accepting the IJ's findings. Reply Br. at 11. First, Mr. Olivas-Melendez is incorrect about the BIA's decision. The BIA provided its own reasoning for declining to reopen Mr. Olivas-Melendez's removal proceedings. It explained that "[t]he cited case law is not a departure from established principles, but instead 'represents at most an incremental development in the law.'" AR at 5 (quoting *Matter of G-D-*, 22 I. & N. Dec. at 1135). Second, *Reyes-Vargas* stands only for the proposition that we have jurisdiction to correct the BIA's misperception that the agency lacks discretion to reopen. Here, the BIA acknowledged its discretion to reopen but simply declined to do so.

Two cases we relied on in *Reyes-Vargas* provide further guidance. In *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009), the Second Circuit held it had jurisdiction where the BIA "misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail." But critically, "[t]he error made by the Agency [there] was not in declining to exercise its discretionary *sua sponte* authority—a decision we cannot review—but, rather, in assuming that [Mr.] Mahmood was inevitably barred from pursuing adjustment of status by his failure to depart voluntarily on time." *Id.* at 471. Similarly, in *Pllumi v. Attorney General of the United States*, 642 F.3d 155, 160 (3d Cir. 2011), the Third Circuit held "[i]f the reasoning given for a decision not to reopen *sua sponte* reflects an error of law, we have the power and responsibility to point out the problem, even though ultimately it is up to the BIA to decide whether it will exercise its discretion to reopen." But, in contrast, if "the BIA declines to exercise its *sua sponte* authority but

18

does so in a manner that does not indicate a misunderstanding of its authority, then that decision will be unreviewable." *Id.* at 163.

In a recently published decision, the Seventh Circuit held that where the BIA's decision to not "reopen the proceedings *sua sponte* did not contain or imply any legal error," judicial review was unavailable. *Hernandez-Alvarez v. Barr*, 982 F.3d 1088, 1098 (7th Cir. 2020). There the petitioner argued, in relevant part, that a prior conviction did not constitute an aggravated felony following the Supreme Court's decision in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017). *Hernandez-Alvarez*, 982 F.3d at 1097–98. The Seventh Circuit rejected the argument that the BIA had made a legal error in determining that *Esquivel-Quintana* did not apply to the petitioner's case "because the [BIA] made no such determination." *Id.* at 1098. "The [BIA's] decision does not suggest that it failed to consider Hernandez-Alvarez's arguments concerning the import of *Esquivel-Quintana* when it determined it did not find an exceptional situation warranting the sparing invocation of a remedy it reserves for truly exceptional situations." *Id.* The Seventh Circuit then explained that the BIA is not compelled to exercise its discretion to reopen even where an intervening decision by the Supreme Court would have resulted in a different result in the petitioner's case if it had been decided before removal. *Id.*

This case is unlike *Reyes-Vargas*, *Mahmood*, and *Pllumi*; *Hernandez-Alvarez* is the better comparison. Mr. Olivas-Melendez's second argument is, at its core, that the BIA misapplied its own standards—standards this court's precedent places beyond our jurisdiction to enforce. There is no indication the BIA misunderstood the

19

scope of its authority; the BIA simply declined to exercise its discretion to reopen. Accordingly, we lack jurisdiction to consider this argument.

In reaching this conclusion, we note some superficial tension with our prior decision in *Mendiola v. Holder*, 576 F. App'x 828 (10th Cir. 2014) (unpublished). Upon more in-depth review, however, that decision is fully consistent with our decision here.

In *Mendiola*, we reaffirmed that "we *generally* lack jurisdiction to review the BIA's discretionary decision to grant or deny sua sponte reopening, . . . [but] we *do* have limited jurisdiction to review certain legal issues underpinning such decisions." *Id.* at 837. For this proposition we relied upon *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013), a predecessor to *Reyes-Vargas*, and *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009), both of which recognize our jurisdiction over legal and constitutional questions. *Mendiola*, 576 F. App'x at 837. We also cited *Pllumi* and *Mahmood* as support from our sibling circuits. *Id.* We then addressed the "two arguments raised by [the petitioner] that f[e]ll within these narrowly defined jurisdictional bounds," one of which was that "intervening changes in the law brought about by the Supreme Court's decision in *Carachuri-Rosendo*[*v. Holder*, 560 U.S. 563 (2010)]" warranted *sua sponte* reopening. *Id.*[6]

---

[6] In general terms, *Carachuri-Rosendo* addressed when a state drug misdemeanor that would be punishable under federal law as a felony because of recidivism constituted an aggravated felony for purposes of immigration statutes. *See Mendiola v. Holder*, 576 F. App'x 828, 842–43 (10th Cir. 2014) (unpublished).

Addressing this argument, we first summarized the BIA's self-imposed standards for *sua sponte* reopening on the basis of a fundamental change in the law. *Id.* at 841–42. Next, we explained that the petitioner had launched two lines of attack in light of *Carachuri-Rosendo*: (1) that the change in law was fundamental because he was not removable under that decision, and (2) that he was eligible for cancellation of removal under that decision. *Id.* at 842 Neither argument, in his view, could have previously succeeded. *See id.*

We reiterated that "we cannot and do not review the [BIA]'s actual decision not to exercise sua sponte authority. Rather, our review is limited to determining whether, in exercising its discretion, the [BIA] relied on erroneous understanding of a question of law." *Id.* Although we also described our inquiry as "whether the [BIA] erred as a matter of law in concluding that *Carachuri–Rosendo* did not represent the sort of fundamental change that the [BIA] has recognized as a basis for sua sponte reopening," *id.*, we went on the explain the narrow scope of that review. The panel did not consider whether the BIA correctly applied its internal rule distinguishing between fundamental and incremental changes; rather, it reviewed only whether, in applying that rule, the BIA correctly understood the holding of *Carachuri-Rosendo*. *Id.* at 843. Once we determined that "the [BIA] did not rely on an incorrect legal understanding of *Carachuri–Rosendo* in concluding that, as to Mr. Mendiola's case, the 'extraordinary intervention of [the BIA's] sua sponte authority' was not warranted," our review of the BIA's decision to decline *sua sponte* reopening as to removability was complete. *Id.* (quoting *In re G–D–,* 22 I. & N. Dec. at 1135).

21

The panel in *Mendiola* next considered the separate issue of cancellation of removal. Although we determined the BIA's interpretation of *Carachuri-Rosendo* regarding removability involved no legal error, we were unsure of whether the BIA correctly understood *Carachuri-Rosendo*'s import regarding cancellation of removal. *Id.* at 843. We noted the BIA's conclusion that *Carachuri-Rosendo* would not support relief on that question was in tension with a footnote in *Carachuri-Rosendo*. *Id.* at 843–44. Because the BIA had "made no attempt to reconcile . . . or to address the apparent conflict," we found it necessary to remand for the BIA to provide us with reasoning susceptible of meaningful review. *Id.* at 844–45. Importantly, we concluded our discussion by "observ[ing] once again . . . [that] the ultimate decision whether or not to grant sua sponte reopening remains entirely in the [BIA's] discretion." *Id.* at 845.

On remand in *Mendiola*, the BIA assumed without deciding that cancellation of removal was available but nonetheless declined to exercise its discretion to allow *sua sponte* reopening. *Mendiola v. Lynch*, 655 F. App'x 653, 655 (10th Cir. 2016) (unpublished). When the matter returned to us, we concluded this assumption "eliminated any possibility [the BIA's] decision denying sua sponte reopening was based on an error of law, i.e., that it conflicted with [the] footnote [] in *Carachuri-Rosendo*." *Id.* at 656. "Its remaining decision . . . is purely discretionary and unreviewable." *Id.*

Thus, even if it were precedential, our unpublished decision in *Mendiola* does not support Mr. Olivas-Melendez's request that we review whether the BIA properly

22

applied its own standards for determining whether a change in the law is fundamental or incremental. Rather, *Mendiola* holds only that we may review whether the BIA has misapprehended the holding of a relevant decision when applying its standards. *See* 576 F. App'x at 841 ("[W]e conclude that the [BIA] correctly apprehended the significance *vel non* of the *Carachuri–Rosendo* decision with respect to Mr. Mendiola's removability."); *id.* at 843 ("[T]he [BIA] did not rely on an incorrect legal understanding of *Carachuri-Rosendo*.").[7]

This case falls on the other side of the admittedly fine line between what we have jurisdiction to consider and what we do not when the BIA declines to *sua sponte* reopen removal proceedings. Mr. Olivas-Melendez does not argue the BIA misunderstood the *holdings* of the decisions he relies on to establish a fundamental change in the law, but rather that it erred in characterizing their *significance*—that they amounted to incremental rather than fundamental change. He goes even further and asks us to instruct the BIA that the cases "must be considered in the aggregate" rather than individually. Reply Br. at 10. In short, he asks this court to do what we cannot—direct the BIA to apply its self-imposed standards in a specific manner. We therefore dismiss this portion of the petition for lack of jurisdiction.

---

[7] The panel in *Mendiola* looked to the BIA's application of its standards to determine whether it correctly stated the holding of *Carachuri-Rosendo.* But at no point did the panel address whether the BIA's application of its standards was correct.

23

## III. CONCLUSION

We **DENY** the petition for review with respect to Mr. Olivas-Melendez's equitable tolling argument and his argument that the IJ lacked jurisdiction due to a faulty notice to appear, and **AFFIRM** the decision of the BIA on those grounds. We **DISMISS** the petition for lack of jurisdiction with respect to his *sua sponte* reopening argument.

Entered for the Court


Carolyn B. McHugh
Circuit Judge